Our next case on the call of the docket is agenda number seven, case number 113688, People v. Albert D'Amalia. Counsel for the appellant, please proceed. May it please the court, my name is Sean O'Toole. I'm with the Office of the State Appellate's Defender and I represent the appellant, Mr. Domagala. Mr. Domagala was convicted of first-degree murder on the theory that his battery of Stanley Kugler set in motion a chain of events culminating 15 days later when Mr. Kugler removed his own feeding tube and caused a deadly infection. Given these facts, any reasonable attorney would recognize the need to investigate an intervening cause such as gross medical negligence severed that chain of events set in motion by his client's ex. In this case, trial counsel did not investigate or pursue that defense. As a result, he was left with an illegitimate direct causation defense that had no chance of success in Illinois law. And more importantly, he did not discover the fact that there was, in fact, gross medical negligence during the treatment of this patient. Mr. Domagala has alleged his attorney's ineffectiveness in a post-conviction petition. The petition is supported with trial counsel's affidavit confirming that he did not, in fact, investigate gross medical negligence as a defense and that this was not something that was born out of trial strategy. The petition is also supported by an affidavit from a prominent physician who specializes in swallowing disorders, attesting that the treating physician in this case did act with gross negligence when they decided to insert a feeding tube in a dementia patient without determining whether it was the neck collar and not any trauma that had caused the inability to swallow or dysphagia. Accepting these fully supported allegations is true, and viewing them in the light most favorable to Mr. Domagala, as is required at the second stage, there is little question that this petition makes at least a substantial showing of counsel's ineffectiveness. The state's second stage motion to dismiss alleges only credibility and fact questions. When a petition is based on matters outside of the record, these questions cannot be resolved absent an evidentiary hearing, and therefore Mr. Domagala asks that this court remand the case for an evidentiary hearing on the question of counsel's ineffectiveness. With regard to the first strickland prong, counsel's deficient performance, the petition makes more than a substantial showing that the federal standard of reasonableness. Counsel admits in his affidavit that we don't need to adopt the federal standard which you bring up with respect to substantial showing to buy your argument. Of course not, your honor. I think we prevail under, although I do think the federal standard is more consistent with what this court has implicitly acknowledged regarding what a substantial showing means. Even if you adopt the state's, I think, overly strict standard, which is that accepting the factual allegations is true, that the claim will prevail, then I think if you accept that Dr. Caldarelli's allegations is true, then there was in fact gross negligence here, and then there was a defense that counsel failed to discover, in fact a meritorious defense that counsel failed to discover. So I'd like to lay out the outline of the strickland prongs and then conclude with an analysis of how those fit into the different standards. But to answer your question, yes, we prevail under any standard. Sir, with regard to, even if what you say is true about the medical negligence, Illinois law, though, on causation would seem to have to affirm the appellate court, a person is guilty of murder if his criminal acts contribute to causing the victim's death. How do you respond to that? Well, there is certainly approximate contributory causation would render Mr. Domagala guilty absent an intervening or superseding cause. And that's the defense here that is available now in the petition that was not presented below at the trial court. So even if the acts contributed to the death, which in this case it was a battery that sent Mr. Kugler to the hospital, it's not clear that this battery caused injury or dysphagia, but in any event, absent a superseding event, clearly it's sufficient for a contributory cause of death. But the question here is whether gross medical negligence, which is a recognized superseding event in Illinois law, was available to counsel and was, in fact, what occurred here and as a result of counsel's failure to investigate the defense that was not presented at trial. Does the defendant have a burden to show something higher than just unskilled treatment or general neglect? In other words, the defendant would have to show intentional conduct or nearly intentional misconduct, gross negligence. Gross negligence is certainly more than simple negligence, more than unskilled medical treatment, but it is something short of intent also, I believe. It's considered abnormal and therefore not foreseeable, and that's why it's something that breaks a chain of events in an approximate causation case. But the fact of the matter remains, we have an affidavit from an expert in swallowing disorders. In fact, it's hard to imagine an expert who could speak to these issues with any more authority than Dr. Caldarelli. This is someone who has treated thousands of patients for swallowing disorders over 30 years and chairs the Department of Bronchosophagology and Otolaryngology at Rush Medical College. And this is someone who says this, in fact, was gross negligence. So whether that's a high standard or not, the fact remains that we do have an opinion here that that standard had been met by someone who can speak with authority on these matters. And what that does is it sets up a credibility contest. The appellate court found that this new evidence would not have altered the outcome of the case because the physicians who testified at trial testified that what they did was correct. But the point of the evidentiary hearing will be to settle the credibility questions that arise because of this new piece of testimony which contradicts those opinions at trial. And the fact that they contradict each other is not, as the appellate court says, grounds for dismissal. In fact, it's the opposite. It's grounds for an evidentiary hearing. Because it's essentially a battle of the experts, which is, as we know from medical malpractice cases, something that will determine what proximately caused the death and whether that proximate causation of the death was in fact gross negligence. Those are quintessential questions of fact that need to be resolved at an evidentiary hearing. It was not proper to weigh that at the second stage? No, it was not proper to weigh that at the second stage because the allegation in Dr. Caldarelli's affidavit must be taken as true. So the State's motion to dismiss is a strictly legal argument, which is what a motion to dismiss is commonly understood as. It's that the defendant, there are no set of facts under which the defendant can prevail. Clearly, if the jury chose to believe Dr. Caldarelli's testimony over the treating physician's, then that's not the case. In fact, there's a substantial showing that the outcome of the case would have been different. But how would the gross negligence in this case be independent of or disconnected from or completely unrelated to the acts of the defendant? Well, in all gross medical negligence cases, in all intervening event cases, you're going to have the chain of events that starts with the defendant's acts and ends with the death of the decedent. The question is whether something in between happens that might not have occurred but for Mr. Kugler's presence in that hospital. But that doesn't change the fact that it does supersede the original event set in motion by the defendant because it is abnormal and is not reasonably foreseeable. The question of proximate cause is simply one of foreseeability. And our law, the common law, has been clear for several years, almost a century, that the gross medical negligence is not something that's foreseeable. So it doesn't matter that it occurred but for Mr. Kugler being in the hospital as a result of Mr. Domegala's acts. What matters is whether it was foreseeable. And with regard to counsel's failure to investigate, this was no mere bald allegation. This is something that's in an affidavit that that failure to investigate was unreasonable. We know from Strickland that counsel has a duty to conduct reasonable investigations or to come to a reasonable decision that further investigation is not necessary. And in this case, counsel says his decision not to investigate was not strategic. So essentially there was no decision not to investigate. So would a reasonable attorney have felt the need to investigate gross medical negligence? And to answer that question, this Court just needs to look at the facts of this case. Counsel was confronted with a gross, with a proximate causation case. The acts set a motion, a chain of events, a battery. Fifteen days later, the decedent died from a stomach infection. So any reasonable attorney would recognize the need to determine whether the medical treatment in between was the proximate cause of the death. But counsel did not believe that the trauma induced any of the swallowing problems. He also aversed that he believes that the neck brace was the cause of the swallowing problem. So what these doctors did to insert a feeding tube into the patient based on the lack of a, based on a swallow study that did not clarify whether it was trauma or the neck collar that was causing the swallowing problems was gross negligence. Now, the doctors at trial said, oh, we would need to insert a feeding tube regardless because the patient needed a swallowing problem to resolve at a second stage, motion to dismiss. I cite the subtle case in my brief. In that case, the defendant, the plaintiff alleged that doctors had missed a symptom that would have caused them to take corrective action to prevent problems in a newborn baby. The doctors there at trial said, oh, we wouldn't have, even if we knew that that symptom existed, we wouldn't have changed our treating evaluations. We wouldn't have changed anything about how we treated this infant. The jury nevertheless found for the plaintiff, but the court entered a judgment notwithstanding the verdict saying, well, just what the state is saying here, those treatment decisions wouldn't have changed even if they knew that the facts were different. An appeal, the appellate court said, no, this is a question of credibility. The fact that the doctors say they wouldn't have changed the treatment decision has to now be weighed in light of what Dr. Caldarelli is saying, which is that it's gross negligence. And think about what Dr. Caldarelli is saying here. He's saying it's gross negligence to have, A, committed to evaluate the patient with this neck cholera and, B, then to decide to insert a feeding tube based on that flawed evaluation. Now, he would not have called this gross negligence if he didn't believe that it somehow hurt this patient. So the state is saying, essentially, under our one version of FADS, it's gross negligence to have a patient with this neck cholera and, B, then to decide to insert a feeding tube based on that flawed evaluation. Now, that's not what the standard is. The standard is, can the defendant prevail under any set of facts under which the defendant can prevail? And if the jury or the trier of fact does ultimately believe that Dr. Caldarelli is correct, and perhaps Dr. Caldarelli might say, consistent with what his opinion is, you could have removed the cholera to feed him if you knew that was what the cause of the swelling problems was. You could have, you know, found him a less restrictive neck cholera, perhaps. This neck cholera had the patient's head up at an angle. So had they known it was the cholera itself and not any trauma, then there's certainly questions as to whether that outcome would have been different. And just a final point on counsel's failure to investigate, just so it's clear. Counsel, by virtue of his failure to investigate, he presented a defense that was not a legitimate defense under Illinois law. He tried to argue at trial that his client did not cause any neck injury, which might be true, but as the trial court found, noted in its defense to this type of proximate causation murder theory. So even accepting trial counsel's arguments at trial is true, the defendant was still found guilty. Granted, when counsel first took this case, he might not have felt a need to investigate. This was a battery. His client clearly didn't intend to cause serious harm. There was no serious harm at the time this trial, these trials, and it was clearly an overreaction by someone who was placed in a very stressful situation of being a 24-7 living caretaker. This was clearly a client who was remorseful. Even before the patient died, he said this was the worst thing he had ever done in his life. But once the patient died and this became not a battery case, but a murder case, it became essential for trial counsel to investigate the client's acts and the death of the decedent. With regard to the Strickland prong, Mr. Domegal's petition includes an affidavit from Dr. Caldarelli, who says that the insertion of the feeding tube was gross negligence. This is the defense under Illinois law, and Dr. Caldarelli is someone who can speak with authority on these matters, and therefore, I think the outcome of the case would be different had he testified. Had he testified for the defense, he would have been able to speak with authority on this. Now, as I said, the defendant was left with no defense at trial. So just by virtue of having a defense, Dr. Caldarelli's testimony would have turned this entire trial on its head. This was a completely one-sided trial. The defense counsel did cross-examine witnesses and did present arguments, but to what end? As the trial court found, those arguments, even if accepted, were not valid. The existence of a viable defense here would alter the entire complexion of the trial and undermine confidence in the verdict. But this was not just any defense. This was a gross medical negligence defense that rested on a prominent physician's testimony. And what Dr. Caldarelli says in his affidavit is clear. The treating physicians were grossly negligent when they decided to insert that feeding tube that led to the patient's death. The idea that this does not undermine confidence in the outcome I don't think can be something this Court can decide at the second stage. And finally, the broader question with regard to the standard this Court will impose, clearly, as I said, I think we prevail under any standard that this Court wishes to adopt. But it's important to remember that a substantial showing requires only a substantial showing, not something that, not a showing that the defendant's testimony is valid, but a showing that the defendant's testimony is valid and that the defendant will prevail, as the State says. And under federal habeas law, the federal courts have already defined substantial showing for us. In deciding whether to grant a certificate of appealability, the defendant must make a substantial showing of the constitutional deprivation. So they've defined that as a showing that is debatable among jurists of all ages. And that definition comports with what this Court has held in the past in cases such as Coleman and Steedle, where this Court has held, not that the defendant will prevail, as the State wants this Court to measure the claim by, but whether the defendant could prevail if the factual allegations are taken as true, viewing it in the light most favorable to the defendant. And remember, we're still at a pleading stage where the only issue is an issue of law, and the only issue is an issue of justice, and that the defense here is defending against a motion to dismiss. So these principles acknowledge that while the claim is fully pledged and is not frivolous, it is still too early to tell whether it will ultimately succeed. And the State standard does not allow for this definition. It does not allow for the word to be used, and therefore, this Court should reject it, adopt the federal standard, and in any event, decide that Mr. Domagala, by supporting his petition with an affidavit from trial counsel, averring that he did not investigate what was perhaps the best and only defense his client had, and by not discovering an expert opinion that there was, in fact, a defense here that severed the chain of events, that Mr. Domagala has made a substantial showing. So I ask that the Court accept the request of ineffective assistant counsel and remand for an evidentiary hearing so that these factual and credibility questions can be resolved. Thank you. Thank you, Mr. O'Toole. Counsel for the appellee. Good morning, Your Honors. I am Assistant State's Attorney Harina Megani Wakely, representing the people of the State of Illinois. The appellate court in this case properly dismissed defendant's petition at second stage because it failed to make a constitutional violation. Since the Post-Conviction Act was enacted in 1949, this Court has consistently held that a substantial showing is made when the well-pled allegations taken as true establish a fully-pled claim of a constitutional violation entitling defendant to relief. Such a requirement of a fully-pled claim of a constitutional violation is perfectly aligned with this Court's standard set for the other two stages in the Post-Conviction Act. For example, at first stage, this Court has recognized, due to the nature of the defendant being pro se, it has set a low threshold requiring the defendant to only make an arguable basis of law or fact to proceed to the next stage. At second stage, it is more than reasonable to expect counsel to make a fully-legally-pled claim where the allegations taken as true actually establish a constitutional violation. And again, that is consistent with third stage. At third stage, there is no legal sufficiency finding. It's a credibility, factual determination of a hearing where the allegations are no longer taken as true in defendant's favor, but tested. And at that point, under an appropriate preponderance of the evidence, that he is still entitled to a constitutional violation occurred and that he's entitled to relief. Defendant's invitation to this Court to adopt the federal definition should be declined, where while this Court has looked to federal cases for guidance in interpreting certain standards in the Post-Conviction Act, it has done so cautiously and only in situations where the standard looked at in the federal system aligns itself perfectly procedurally with our Post-Conviction Act. And when one looks at the federal system, there is no second stage relevant stage under the federal habeas. But more importantly, the federal definition that's being presented to this Court, the substantial showing term, was used in an appropriate manner from what is at second stage currently. I mean, in the federal definition, it was used as a procedural standard for federal defendants that needs to be met before they will be entitled to even appeal the dismissal of their writ of habeas. In Illinois, defendants are entitled automatically to appeal their dismissals. I mean, again, the federal system does not have a three-stage process. And if there's any analogy to be drawn by this federal definition, it is a threshold requirement at the federal level. And it's similar, if any analogy is to be drawn, similar to our first-stage dismissal, where when one looks at the language utilized for the standard, the debatable federal language is virtually identical to the arguable language that this Court has used to advance that first stage. Turning to the facts of this case, defendant failed to make a well-pled, fully supported, substantial showing of ineffective assistance of counsel, where under Strickland, his well-pled allegations taken as true needed to establish both prejudice and deficient performance, and he could do neither with his allegations. First, attorney's performance met the Strickland standard at trial, where he made a strategic decision to present a causation defense. And he did this by challenging the state's ability to prove a causation, that defendants' actions in the link of change that led to death actually was the ultimate cause of death, which was something the state had to prove. And defense put chinks and kept chinking away or kept chipping away. And he did this first by investigating prior to trial. He did speak to an expert. He spoke to an expert on the issue of causation, specifically, was there anything that separated defendants' acts from the ultimate death? And he asked the court for leave to file petition fees to pay this expert, and the court granted this. And under Strickland, the presumption is, and he, in fact, utilized these fees that he was given, spoke to the expert, and by the fact that the record shows that the expert was not called, the presumption is that the expert did not offer any helpful information helpful to defendants' case. Does that presumption still stand when the attorney's filed an affidavit saying he didn't investigate it? This, well, one needs to look at what exactly is said in this affidavit. And when one looks at the affidavit that was filed, in this case, the attorney, I'm sorry, I apologize. When one looks at the affidavit that was filed in this case, counsel Greenberg said in his affidavit, I didn't investigate a particular defense, medical gross negligence. He didn't say I didn't present, I investigate a defense or that I didn't do anything at trial, which is analogous to the situation that occurred in Stuyvesant. In the case of Fidel, where an affidavit similar to something similar to what was filed here was found to be sufficient for deficient performance, because in that case the attorney specifically said, I didn't investigate any mitigation evidence to put forth at the death penalty hearing, because I didn't think he was going to get the death penalty. And that affidavit, I didn't do anything was sufficient to show deficiency. Here, counsel Greenberg's affidavit simply says, okay, I didn't explore gross medical negligence, and that this wasn't a strategic decision. But Strickland focuses on, let's look at what attorney did do. And again, he presented a defense. His defense was to stop the state from proving their case. And he did this again by doing investigation. Was it reasonable to pursue a direct causation defense in which we already went through with Mr. O'Toole's argument that even if he contributed to would have been enough? In fact, that's what you would have been arguing even if he did call that. That's what trial counsel would have been arguing even if he did call an expert on the direct causation defense. It was absolutely a viable defense, because if the state couldn't prove every link in the chain, that from defendant's actions to the ultimate death, and that's exactly what trial counsel went after below. Where, I mean, he, from the first state witness, the first witness to the last state witness, he went after could anything else have caused it, could, I mean, in fact, at the point, the most effective performance that he did was he prevented the state from eliciting highly prejudicial necessary evidence through Dr. Bajaj when the state asked him, did defendant's actions cause the dysphagia? That was the question. Objection, Your Honor. I don't believe that he was putting in such prejudicial as well as necessary evidence at that point. I mean, trial attorney But even if, even if the, as I understand the defendant's argument, even if the actions of the defendant didn't cause the dysphagia, if the actions of the defendant in whatever he did resulted in the feeding tube as a natural course of event, as opposed to a supervening event of gross negligence, the defendant remains responsible. The defendant argued that the defendant's actions were not a natural course of event. The defendant argues specifically that counsel disavowed the defense of gross negligence, saying we're not saying there was gross medical negligence here. Well, and, and which is why, while gross medical negligence could have been one viable strategy that counsel could have explored, and which he says he didn't, it doesn't mean that he didn't do something in the alternative, which is what Strickland says to look at. Okay, so if, if, are you saying that if he could prove that he didn't cause the dysphagia, that would be a supervening event that would take this out of proximate cause? Yes. Right, but counsel would say, opposing counsel would say, that all, all that would have to be shown then, that whether he caused it or not, that he set the events in motion by what he did in the room that day with the victim. And I guess the question becomes, is it, is it a viable trial strategy to say that I'm going to pursue this, but I'm not going to pursue this? For example, the intervening superseding cause? I mean, I'm just thinking about if this set of facts, and I know that we weren't dealing with a medical malpractice attorney here, but if this set of facts was presented to a medical malpractice attorney, unquestionably, if he had the affidavit or the knowledge of what Dr. Calderelli, if he had the knowledge of what he said, and he testified that way at trial, he'd certainly get past any directed verdict motion, wouldn't he? No, he wouldn't, and let's, I mean, that, that goes to... But if, but if this particular doctor testified on behalf of the plaintiff in a medical malpractice case consistent with his affidavit, you don't think he would get past any directed verdict motion, that there wasn't malpractice in this case, which counsel would say is the superseding intervening cause? No, he, he wouldn't if you took Dr., what Dr. Calderelli said in, in this, in his affidavit, where Dr. Calderelli, his affidavit taken as true, said, and I apologize, that a swallow test should not have been done with the collar, because it could skew results, that an independent test should have been done of the throat, and that it's gross medical negligence if the PEG tube is inserted solely based on the swallow test, because then the use of the collar was the sole proximate cause of death. Here we have Dr. Bajaj, even accepting the basis of Dr. Calderelli's opinion of those points, we have Dr. Bajaj, who testified clearly at trial, that he did do exactly what Dr. Calderelli is saying should have been done in this case, outside of the swallow test. He performed an independent examination of the throat, and his independent examination without the collar showed pooling in the molecular folds. And that this pooling was indicative of trouble swallowing. And Dr. Bajaj testified that it was after this independent evaluation that he concurred with the other experts in the case that a PEG tube was necessary. And so Dr. Bajaj's testimony, and again, taking Dr. Calderelli's testimony, was that the PEG tube was not inserted solely based on the use of the collar, and that there was no gross medical negligence. And so in response to your question, Your Honor, no, at a directive verdict it would not have won based on what Dr. Calderelli said and what is currently before the record. The State's position is that the well-pled allegations taken as true do not establish an ineffective assistance of counsel claim, that there was no showing of a substantial, there was no showing of deficient performance, nor was there a showing of prejudice such that even if Dr. Bajaj testified, there was a reasonable probability that the outcome would have changed. Clearly, the people's position is that a substantial showing was not made in this case. The only way that defending can prevail in this, before this Court, is if this Court finds that his allegations of ineffective assistance of counsel taken as true presents a fully pled claim, meaning that he establishes both prongs of performance. For these reasons, as well as those stated in our brief, we respectfully ask that the appellate court's decision be affirmed. Thank you. Rebuttal. Your Honors, with regard to the standard, we don't disagree that the claim needs to be fully pled or that it needs to be taken as true. The difference is the State wants a substantial showing to mean the establishment of a claim, when in fact a substantial showing, whether you look at the Federal courts or this Court's precedent, has always been described as something less. The State essentially reads the word substantial out of the standard. And with regard to the adoption of the Federal standard, regardless of the context in which it arises, this Court should strive for continuity between two standards that are phrased in the exact same way. There shouldn't be a substantial showing that means one thing in Federal court, it means another thing in this Court. With regard to counsel's performance, this was not a strategic decision. For one, he says in his affidavit that his failure to investigate gross medical negligence was not a matter of strategy. It was an omission. It's true, he was not a medical malpractice attorney, and perhaps that's why he didn't recognize the need for a gross medical negligence investigation in this case. But that doesn't excuse the fact that a reasonable attorney, knowing that it's a proximate causation case, would feel the need to investigate whether something broke that chain of events. Because as you said, that was the only viable defense. Now the State wants to say that by attacking various links in the chain, defense counsel performs reasonably. That's not what Illinois law says. Regardless of whether there was a but-for causation shown at each step of the way, and by the way, there was only a few links in this chain. He's taken to the hospital, there's a neck brace put on, there's the evaluation that he can't swallow, and then there's the decision to insert a feeding tube. So attacking any one of those doesn't change the fact that the chain of events was set in motion by Mr. Domegala's acts. The only viable defense was to find something that broke that chain of events. And as for the objection as to what the State extols counsel's ability or his decision to object to the question of whether Mr. Domegala actually caused the dysphagia, in fact, that was his entire defense, that Mr. Domegala did not cause dysphagia. And in fact, Dr. Caldarelli now says with even more certainty that he probably did not cause the dysphagia, but that's not the relevant part of Dr. Caldarelli's testimony because that's not a viable defense. Whether or not he caused injury, he set in motion a chain of events. So that's the importance of Dr. Caldarelli's opinion here. Now with regard to the State's answer on the directed verdict question Your Honor was asking, the only way the State can answer no to that question is by reading Dr. Caldarelli's affidavit in the most narrow fashion possible. That's not how you're supposed to read an affidavit in this case. You're supposed to read it in the light most favorable to Mr. Domegala. And in the light most favorable to Mr. Domegala, the testimony that it was gross medical negligence to conduct a swallow study while the patient was wearing a neck brace and thereby not understanding the cause of the dysphagia and basing your decision to insult Mr. Domegala on the basis of the assert, what these doctors candidly admitted was a feeding tube that had a reasonable probability of cause, or it was reasonably foreseeable at least, that a feeding tube could cause the death of a patient with dementia because of the propensity to pull these feeding tubes out. The only way to read that affidavit in this case in the light most favorable to Mr. Domegala is that the treating decision would have been different, the outcome would have been different, the patient wouldn't have died, and that decision was grossly negligent. Otherwise he'd have no reason to call it grossly negligent. Was there testimony, Mr. O'Toole, that the doctors in this case did everything as Dr. Caldarelli had explained, that they did exactly what he said they should do? No, not at all, Your Honor. They all admitted that the swallow study was done with the neck collar in place. Now, the state point, the state has to answer that question about the directive verdict. No, the state not only has to answer or evaluate the petition in the light most favorable to them, but they also have to read the record in a way that is most liberal to them as well. Because when she cites Dr. Bajaj's testimony about the pooling that was seen without the collar, he did not say he evaluated the patient for swallowing problems absent the collar. He said he took the collar off and he noticed some pooling. He didn't say that there was, that whether this was pooling was a result of the collar having just been on. He did not conduct the swallow study, which obviously the doctors felt and Dr. Caldarelli feels is the gold standard by which you measure the ability to swallow and is the only way that you can diagnose dysphagia. So the fact that he found some pooling in the brief seconds that he took the collar off is irrelevant. What is relevant about that testimony is that he felt he could take this collar off. One of the things that gets overlooked here is that these doctors originally diagnosed Mr. Domagala with a neck fracture. That diagnosis turned out to be wrong and that's why they put the neck collar on him. So after further examination showed it was just a neck sprain, Dr. Bajaj clearly felt he could take the collar off. He did not say that the neck collar itself was causing the dysphagia. They did not consider the fact that a feeding tube might not have been necessary in this case. And that's the import of Dr. Caldarelli's testimony. Had the doctors known, because when they gave this testimony, they were operating under an inaccurate assumption that dysphagia was caused by trauma. Had they known it was caused by a neck collar, it can be reasonably inferred from Dr. Caldarelli's affidavit that dysphagia was caused by trauma, that they would have done something different. Otherwise, there's no reason to call their behavior grossly negligent. And I think that the only way to resolve this question is that at an evidentiary hearing, and however this court wants to define substantial showing, it's clear that this affidavit, which has support at both the, not only allegations, but support for both of the strickland prongs, is in fact fully pled, fully supported, and raises only questions of credibility. An evidentiary hearing is absolutely necessary. Thank you. Thank you. Case number 113688, People v. Albert Domegala. It's taken under advisement as agenda number seven. Mr. O'Toole, Ms. Magani-Wakely, thank you for your arguments today. Mr. Marshall, the Illinois Supreme Court stands in recess until 1040 a.m.